## MILLER, TRUSTEE, ET AL. v. THE KEOKUK & DES MOINES R'Y CO. ET AL.

1. **Nuisance:** ACTION FOR DAMAGES AND ABATEMENT: RIGHT TO JURY TRIAL. Under section 3331 of the Code, where a party sues for damages occasioned by a nuisance, he is entitled to have his damages assessed by a jury, notwithstanding he may seek in the same action to have the continuation of the nuisance enjoined.

2. **Practice:** MISJOINDER OF PARTIES: OBJECTION TOO LATE. An objection that there is a misjoinder of parties, plaintiff or defendant, should be made by motion to strike out the parties improperly joined. It cannot be raised for the first time on motion in arrest of judgment.

3. **Statute of Limitations:** WHEN IT BEGINS TO RUN: INJURY BY NUISANCE. Against a cause of action for damages caused by water flowing through a ditch wrongfully dug, the statute begins to run, not from the date of the digging of the ditch, but from the date of the damage caused thereby.

4. **Negligence:** PLEADING: AVERMENTS HELD SUFFICIENT. The petition in this case not having been assailed by demurrer or motion, *held* that the averments, though not very definite or exact, were sufficient to entitle the plaintiffs to recover upon the ground of negligence in the construction of a ditch.

5. **Nuisance:** RECOVERY OF DAMAGES: OWNERSHIP OF LAND AFFECTED. Where one is injured by water flowing upon his land through a ditch wrongfully dug thereon, it is immaterial that he did not own the land when the ditch was dug; it is enough that he owned it when the injury occurred.

6. **Railroads:** CONDEMNATION OF RIGHT OF WAY: WHAT DAMAGES COVERED BY. In condemnation of right of way for a railroad, only such damages are compensated as arise from the proper construction of the road. For negligent or improper construction additional damages may be recovered.

7. **Verdict:** EXCESSIVE: REDUCED BY CONSENT IN THIS COURT. The verdict for plaintiffs in this case being in excess of what the evidence justifies, it is, by consent of plaintiffs, reduced in this court, and the judgment, so modified, is affirmed.

*Appeal from Leè District Court.*

THURSDAY, SEPTEMBER 20, 1883.

IN 1875, one Adam·Hine owned certain land dessribed in

the petition. On the twenty-eighth day of April, 1875, a right of way for railroad purposes, one hundred feet wide, was condemned through said land by the defendant, the Keokuk & Des Moines Railway Company, and the said company paid therefor $725. During the same year, the Keokuk & Des Moines Railway Company constructed its road over said land. In the construction of said road it became necessary to raise the track above the plane of the ground, and, to obtain material for that purpose, a ditch was dug on each side of the track. One of these ditches was so dug that it communicated with the Des Moines river. The portion of the premises now in controversy lies between the railroad and the Des Moines river, and is lower than the banks of the river.

In 1877, Adam Hine and his wife conveyed the premises in controversy to their son, Charles W. Hine. In January, 1879, Charles W. Hine conveyed the same land to his mother, Margaret F. Hine. In January, 1880, Margaret F. Hine, with her husband, Adam Hine, conveyed the land to Daniel F. Miller, Jr., as trustee for her, with authority for her, during her natural life, to occupy the land and use it as she pleases, and to receive the rents and profits of it during her natural life, with remainders and trusts, all subject to her right to the absolute use of the land, and to receive the rents and profits during her natural life. In June, 1881, a rise in the Des Moines river caused the water to back through the ditch and to flood a portion of the premises in question, then in the possession of the plaintiff, Margaret F. Hine, destroying a part of the crop growing thereon. On the first day of September, 1881, Daniel F. Miller, Jr., as trustee, and Margaret F. Hine, united in an action against The Keokuk & Des Moines Railway Company and The Chicago, Rock Island & Pacific Railway Company, entitling the petition, "at law and in equity," asking damages in the sum of $300, and praying "for a decree enjoining defendants to cause to be erected a sufficient number of dams across said ditch to protect said realty from being flooded with water coming out of said ditch,

when there is or may be a heavy rise in said river." Afterwards an amended petition was filed, claiming damages in the sum of $500.

The cause was tried to a jury, and a verdict was returned against both defendants for $339. A motion to set aside the verdict and for a new trial was sustained as to The Chicago, Rock Island & Pacific Railway Company, and overruled as to The Keokuk & Des Moines Railway Company. A motion in arrest of judgment on the grounds, amongst others, of a misjoinder of parties, both plaintiff and defendant, and that the petition does not state facts sufficient to constitute a cause of action, was overruled. Thereupon the plaintiffs, against the objection of the defendants, were allowed to dismiss the equitable part of their petition, and judgment was rendered in favor of plaintiffs against The Keokuk & Des Moines Railway Company for the sum of $339 and costs. The defendant, The Keokuk & Des Moines Railway Company, appeals.

*Anderson Bros.* and *Davis*, for appellant.

*Daniel F. Miller, Sr.*, for appellees.

DAY, CH. J.—I. When the cause came on for trial, counsel for plaintiffs demanded a jury, to which defendant's counsel objected, for the reason that the cause is an

1. NUISANCE: action for damages and abatement: right to jury trial.

equitable one, and triable by the court only. The court held that the plaintiffs were entitled to a jury trial for the purpose of determining the amount of damages. This action of the court is assigned as error. The appellee claims that the action is brought under section 3331 of the Code, which provides, in a case of nuisance, that "a civil action by ordinary proceedings may be brought thereon by any person injured thereby, in which action the nuisance may be enjoined or abated, and damages also recovered therefor." Under this section, it seems that in an action at law damages may be recovered for a nuisance, and the nuisance itself may be enjoined. In view of the pro-

visions of this section, we think the plaintiffs were entitled to have their damages assessed by a jury, notwithstanding the fact that they coupled with their claim for damages a prayer that the defendants might be enjoined from, continuing the ditch in such condition as to injure the plaintiffs.

II. The defendant insists that there is a misjoinder of parties plaintiff. This objection was raised for the first time in the motion in arrest of judgment. The objec-

**2. PRACTICE: misjoinder of parties: objection too late.** tion, to be available, should have been raised by motion to strike out the party improperly joined. *Ind. School Dist. of Graham Tp. v. Ind. School Dist. No. 2.*, 50 Iowa, 322; *Dubuque County v. Reynolds*, 41 Id., 454; *Mornan v. Carroll*, 35 Id., 22.

III. The defendant further insists that there was a misjoinder of parties defendants. This objection, like the pre-

**THE SAME.** ceding one, was raised for the first time in the motion in arrest of judgment. The objection cannot be so raised for the first time. It is not even ground of demurrer, but should be made by motion to strike out the party improperly joined. See *Turner v. First National Bank of Keokuk*, 26 Iowa, 562, (567,) and cases cited; *King v. King*, 40 Id., 120; *Dist. Tp. of White Oak v. Dist. Tp. of Oskaloosa*, 44 Id., 512. The case of *Cogswell v. Murphy*, 46 Iowa, 44, relied upon by appellant, is not in point. In that case there was a misjoinder of causes of action as well as of parties defendant, and the objection was raised by answer as well as by motion in arrest of judgment.

IV. The defendant insists that the cause of action is barred by the statute of limitations. The ditch in question was dug in 1875. The suit was commenced in 1881.

**3. STATUTE of limitations: when it begins to run: injury by nuisance.** Appellant insists that the action is barred under the doctrine of *Powers v. City of Council Bluffs*, 45 Iowa, 652. Although the ditch was dug in 1875, the evidence shows that no damage resulted therefrom until June, 1881. In *Powers v. City of Council Bluffs*, it is distinctly asserted: "No suit could have been maintained

until some actual injury was caused to the plaintiff by the action of the water, resulting from the improper construction of the ditch."

The ditch in controversy in that case was constructed in 1859 or 1860, and yet it was held that the statute of limitations did not commence to run until 1866, when the ditch first began to affect plaintiff's premises. If it should even be conceded that this case falls under the principle of *Powers v. The City of Council Bluffs*, the statute of limitations did not begin to run until the first injury was sustained, in 1881.

V. It is insisted that the petition does not state facts sufficient to constitute a cause of action, in that it does not aver that the ditch in question, was wrongfully, carelessly, negligently, or improperly made. It must be conceded that the petition in this respect is not very definite or·exact. It does allege, however, "that if said ditch had not been there, or if it had been properly protected by dams across it, said damages would not have happened to said crops;" and that "it was the duty of said proprietors of said road, when they made said excavation, to have built dams across said ditch, to have prevented the flood-water of said river from running through or backing up same to the overflowing of said realty;" and "plaintiffs aver that it was through the fault and wrong of both said defendants, in not causing said ditch to be properly banked or dammed to protect said land from overflow, and that they should be liable for the damages done to said crops." The petition not having been assailed by demurrer or motion, we think the averments are sufficient to entitle the plaintiffs to recover upon the ground of negligence in the construction of the ditch.

*4. NEGLI-GENCE: pleading: averments held sufficient.*

VI. It is insisted that the plaintiffs cannot recover, because they did not own the land when the ditch was dug. Under the law, as announced in *Powers v. The City of Council Bluffs*, no right of action for this injury accrued when the ditch was dug. This

*5. NUISANCE: recovery of damages: ownership of land affected.*

right of action arose when the injury was inflicted, and that was done after plaintiffs became the owners of the land.

VII. It is claimed that the damages in question were covered by the condemnation proceedings. In condemnation proceedings, only such damages are compensated as arise from the proper construction of a railroad. For negligent or improper construction additional damages may be recovered. *King v. Iowa Midland R. R. Co.*, 34 Iowa, 458. The court correctly instructed the jury that plaintiffs could not recover unless there was negligence in the constructing of the ditch.

6. RAILROADS: condemnation of right of way: what damages covered by.

VIII. It is claimed that the verdict is excessive. The original petition alleges that the water flowing through said ditch destroyed about twelve acres of growing grain, to the damage of plaintiffs in the sum of $300. The amended petition claims damages in the sum of $500, but does not allege that any greater quantity of grain was destroyed. The highest estimate placed upon the grain is $30 per acre which would be $360 for the twelve acres.

7. VERDICT: excessive: reduced by consent in this court.

The evidence shows, however, that the crops were raised by a tenant who was entitled to one-third thereof. Deducting the tenant's share, there is left but $240 as the highest amount for which the plaintiffs can have judgment. Plaintiffs' counsel consent that, if we shall find the verdict excessive, we may reduce it to the proper amount. The defendants' counsel have assigned seventy-three errors, and divided their argument into sixty-two distinct heads. It is not practicable to notice separately all the objections urged. The foregoing discussion disposes of the material points in the case.

We have examined the entire record, and, except as to the amount of the judgment, we discover no error in the case. The amount of the judgment will be reduced to $240. The appellee will pay the costs of this appeal.

MODIFIED AND AFFIRMED.