RUSSELL CHAPMAN *vs.* DANIEL H. BEARDSLEY AND OTHERS.

*B* mortgaged his homestead and two other pieces of land to a savings bank. He afterwards conveyed the equity of redemption in the two other pieces to *P*, who agreed, as a part of the consideration, to pay the note at the savings bank, so as to release the homestead. *P* neglected to do this, and afterwards conveyed the equity in the two pieces to *C*, in payment of an indebtedness to *C*, the latter taking with full knowledge of the agreement of *P* to pay the savings bank debt but at the time refusing to assume that agreement. The savings bank afterwards brought a bill for a foreclosure and *C* was compelled to pay the debt. He then brought a bill for a foreclosure against *B*, the original mortgagor, on the mortgage given by him to the savings bank. Held, that as *C* took his conveyance with a full knowledge of *P*'s agreement with *B*, he was bound to satisfy the savings bank debt out of the two pieces of land and to save the homestead for *B*, and that he could not foreclose *B* on the mortgage.

Under the agreement between *B* and *P*, the latter became in equity the principal debtor to the savings bank, and *B* a surety.

This was not technically an agreement running with the land and which would have affected a bona fide purchaser, but *C* was affected by it through his actual knowledge of it, and his refusal at the time of his purchase to acquiesce in it could make no difference.

Where the consideration of a conveyance is the assumption by the grantee of certain debts of the grantor, and there is no agreement to pay money to the grantor, there can not be a vendor's lien in favor of the grantor.

BILL for a foreclosure ; reserved by the superior court, on facts found, for the advice of this court. The facts are sufficiently stated in the opinion.

*C. R. Ingersoll*, for the petitioner.

*C. Ives*, for the respondents.

BUTLER, J. The principal facts which are material to a correct determination of this case may be extracted from the extended finding and re-stated in a few words.

Beardsley was the owner, (with his wife,) of three tracts of land, one of them known as the homestead, on which they lived. He borrowed $1,000 of the savings bank, gave a note for it, and mortgaged the three pieces of land to secure it. Afterwards he conveyed two of the tracts to Barker, who was acting for himself and the Pages, and as part of the consideration of the conveyance Barker agreed to assume and pay the note to the bank. The equity of redemption in the two tracts afterwards, by conveyance from Barker, vested entirely in the Pages, and it became their duty to pay the note and release the homestead.

They neglected to do it, and afterwards, by an arrangement with the petitioner, conveyed the two tracts to the petitioner, who had full knowledge of the facts, but refused to acquiesce in the obligation of Barker ; and he, having paid the bank, seeks to collect the note out of Beardsley and the homestead by a foreclosure, that he may apply the two tracts on a debt due from the Pages to himself.

Has Beardsley any equities which will protect him from this sharp and obviously unjust proceeding ?

It must be conceded that the Pages did not hold the two tracts subject to a vendor's lien in favor of Beardsley. No *money* was agreed to be paid to *him*, as the consideration of the conveyance to Barker. That consideration was the *assumption* of other claims, together with the mortgage debt to the bank. The case is clearly within the principles recognized by this court in *Meigs* v. *Dimock*, 6 Conn, 458, and Beardsley can not protect himself on the ground that he has a vendor's lien.

Nor did the Pages hold the land technically in trust. All the claims were *assumed* by Barker, and all except this had been paid, and there was no resulting trust for Beardsley, and no trust in favor of the bank. The rights of the bank were fixed in the property by a *prior* conveyance, and were those of mortgagee, and not of *cestui que trust.*

Nor did the Pages hold the land subject to any covenant or agreement which could technically run with it and affect it in the hands of a bona fide purchaser. But they did hold it under an agreement which made them in equity *principal debtors* to the bank, and Beardsley a *surety*, whose name was upon the note, and whose homestead was mortgaged to the bank, but for an obligation which it had become their duty to pay, and exonerate him from the note and his homestead from the mortgage. *Atwood* v. *Vincent*, 17 Conn., 583.

This equitable relation of the parties the petitioner fully understood. But under the supposition that, inasmuch as the agreement to assume the note was not made by him nor on his account, he could take the property from the Pages, apply it on his debt, pay the note to the bank, and compel Beardsley to pay it over again by this proceeding, he colluded for that purpose with the Pages. But he mistook, both in respect to the rights of Beardsley and the rules of equity. Much stress has been laid upon an expression of Judge Church, in giving the opinion of the court in *Atwood* v. *Vincent*, wherein he speaks of the *acquiescence* of Vincent. It is obvious that he alluded to the fact that there was an actual acquiescence in that case as an additional, not as a necessary fact. The petitioner took especial care not to acquiesce in fact in this case, but that can serve no purpose, except to show the deliberate unfairness of his intentions. In equity and good conscience it was his duty to acquiesce, and he knew it. What he ought in good conscience to have done, equity if necessary would consider done. But no such necessity exists. Beardsley had equitable rights in respect to this mortgage, and all the premises covered by it, which his refusal to acquiesce could not affect. As a surety Beardsley could at any time have paid the bank, and foreclosed the two tracts held by the Pages. The petitioner, by taking the equity of redemption in these tracts, became a party to the mortgage, and subject to all the equitable rights of Beardsley in relation to it of which he had notice; and when he paid the note to the bank he performed an equitable duty, and discharged and exonerated Beardsley and his homestead.

The superior court should be advised to dismiss the bill.

In this opinion the other judges concurred.