H. R. HAWLEY, Appellant, v. THE EXCHANGE STATE BANK OF STUART.

97   187
114   631

**Pleading:** LAW AND EQUITY. A complaint which alleges that a bank agreed that a third person should draw checks upon it for cattle purchased by him, that it should appropriate from the proceeds of the cattle bought, sufficient to pay the checks, and apply the balance on a debt from him; that he purchased stock of plaintiff, giving a check on defendant for the purchase price, which the bank verbally promised such *third* person it would pay, in reliance on which check, plaintiff delivered the stock, and that defendant, although it had received the proceeds of a sale of the stock, exceeding the amount of the check, refused to pay it,—states a cause of action at law on the verbal promise to pay plaintiff's checks, instead of one in equity to follow the proceeds as a trust fund.

**Practice:** TRANSFER TO EQUITY. An entire case should not be transferred from the law to the equity side of the docket, where the complaint states a cause of action at law, as well as one in equity.

*Appeal from Guthrie District Court.*—HON. A. W. WIL-
KINSON, Judge.

TUESDAY, FEBRUARY 4, 1896.

ACTION at law to recover from defendant the
amount of a certain check issued to plaintiff by one
W. F. Smith, and which it is claimed the defendant
promised and agreed to pay. The defense is practi-
cally a general denial. The court, on motion, trans-
ferred the case to the equity docket, and plaintiff
appeals.—*Reversed.*

*F. O. Hinkson* and *Bishop, Bowen & Fleming* for
appellant.

*White & Clark* and *Sever & Neal* for appellee.

DEEMER, J.—The only question in the case is as
to the regularity of the order transferring the case to
the equity docket for trial. The determination of the
question involves a consideration of the pleadings,
and a somewhat extended statement of the
issues. The plaintiff alleged, in substance:
That in 1894, one Smith, was engaged in the
business of buying and selling stock at, and near, the
town of Stuart, near which town plaintiff resided.
That about August 10, 1894, Smith was indebted to
the bank in the sum of over one thousand, five hun-
dred dollars, and on said day defendant and Smith
entered into an arrangement, or agreement, by which
Smith was to go out and make purchases of stock,
and, in payment thereof, should issue, and deliver to
the sellers thereof, his checks, drawn upon the defend-
ant bank, for the amount of his purchases, which
checks should be paid by defendant as soon as pre-
sented; that the stock so purchased should be put

upon the general market by Smith, and sold, and the proceeds turned over to the bank as fast as realized; and that, of the proceeds, the bank should appropriate an amount sufficient to pay the checks issued for the purchase price, and the expense incurred in handling the stock, and the balance should be appropriated by the bank, and applied in satisfaction of the indebtedness due it from Smith. That Smith immediately entered upon the performance of the agreement, and, in August, 1894, purchased of plaintiff, stock to the value of one thousand, one hundred and ninety dollars, and eighty-five cents, for which amount Smith gave plaintiff a check upon the defendant bank. That after the purchase of plaintiff's stock, but before delivery of the same, and before the issuance of the check, defendant was informed by Smith of the purchase, and the defendant thereupon verbally promised, and agreed, that, upon presentation by plaintiff of a check for the purchase price, it would pay the same. That upon receipt of the check, and relying upon the payment of the same by the bank, the plaintiff delivered his stock to Smith. That Smith immediately shipped the stock to Chicago, and, upon receiving bill of lading for the same, indorsed, or assigned it to defendant, and the proceeds from the sale of the stock were remitted to the defendant bank. That the proceeds so received by the bank were largely in excess of the amount of plaintiff's check. That defendant well knew before the shipment of the stock by Smith, and before it received the bill of lading, or the proceeds thereof, that the stock had been purchased of plaintiff by Smith, that he had given his check for the amount of the purchase price, and that plaintiff would expect payment of the same from the bank. That, upon receiving the proceeds from the sale of the stock, the defendant, with intent to cheat and defraud the plaintiff, purposely and corruptly, and in open and

direct violation of the terms of its agreement with Smith, took and appropriated the whole of the money received by it, and applied the same in payment of the indebtedness of Smith to it. That plaintiff presented this check to the bank for payment, but the defendant refused to pay or honor the same. The prayer is for judgment against the bank, for the sum of one thousand, one hundred and ninety dollars, and eighty-five cents, with interest and costs, "upon the facts hereinbefore alleged." The answer is a denial of all matters, except the receipt of one thousand and seventy-three dollars and six cents, from Smith, by remittance from Godair & Son; the alleged indebtedness of Smith to the bank, and the application of the money received from Smith to his indebtedness.

Does this petition present a cause of action at law, upon the alleged contract of the defendant, or is it, in effect, a suit in equity, in which the plaintiff is attempting to follow the proceeds arising from the sale of his stock, as a trust fund?—is the question for solution. The defendant contends, that the facts stated do not constitute a good cause of action at law, and that, therefore, it must be considered a suit in equity; while the plaintiff insists that it is purely a law action, in which he seeks to recover upon a promise made by defendant to Smith, in which he is the beneficiary, and that, while more may be stated than is necessary, yet these unnecessary and irrelevant allegations should be treated as surplusage. It seems to us that this is not an attempt to follow the specific funds, and impress upon them the character of a trust, but rather, an action on the alleged promise of defendant to pay the check. Neither is the action upon the check, but rather, upon a promise to pay the amount of the check. It is said, however, that there was and is no consideration for the promise, if one was made, and that for this reason, if for no other,

the suit must be in equity. This position overlooks the fact that, according to the allegations of the petition, the contract has been fully executed by Smith, and the money received by the bank, and the further statement, that plaintiff parted with his property, relying upon the payment of the check by the bank. It needs no citation of authorities to show that under such circumstances, the third person, for whose benefit the promise was made, may recover upon it. The receipt of the proceeds of the goods was a sufficient and completed consideration. It is also familiar doctrine that a third person may maintain an action on a promise made to another for his benefit, although he was not a party to, or cognizant of it, when made. *Johnson v. Knapp,* 36 Iowa, 616. The relief asked in the case, is a money judgment. True it is, that this judgment is asked upon the facts pleaded. But there is nothing in the petition indicating that plaintiff was seeking equitable relief, except, perhaps, it may be the statement that defendant received the money arising from the sale of the stock, knowing that it was not paid for by Smith, and wrongfully and fraudulently applied it on Smith's debt, with intent to cheat plaintiff out of the purchase price. These allegations, however, do not, even if they be treated as stating a cause of action in themselves, constitute a cause solely cognizable in a court of equity. If they amount to anything, in and of themselves, they show a cause of action for fraud, which would be cognizable either in a court of law or chancery. Moreover, the first of these allegations was irrelevant to the action, if it be treated as at law. The statements as to fraud on the part of defendant may, and undoubtedly should, be treated as surplusage. If they are irrelevant, the proper manner of reaching them is by motion to strike, rather than to transfer. If it be conceded that, on any tenable theory, two causes

of action are stated—one at law, and the other in equity—then the motion to transfer the whole case was erroneously sustained. There is, as ·we have already said, nothing to indicate that plaintiff was or is attempting to follow the funds arising from the sale of the cattle into the hands of the defendant, and to impress upon them a trust. There is no allegation or claim of trust—no statement as to the amount received by defendant, except that plaintiff says he is informed and believes it was largely in excess of the price agreed to be paid him therefor. We are well satisfied that the pleading sets forth a cause of action at law, but, if it be conceded that it also contains statements sufficient to justify relief at the hands of a chancellor, yet, in either event, the motion to transfer should have been overruled. As sustaining our conclusions, see *Gribben v. Hansen*, 69 Iowa, 255 (28 N. W. Rep. 584); *Price v. Insurance Co.*, 80 Iowa, 408 (45 N. W. Rep. 1053). The case of *Thatcher v. Stickney*, 88 Iowa, 454 (55 N. W. Rep. 488), does not militate against our views. For the reasons suggested the order of the district court will be REVERSED.