J. F. GORMAN, Appellant, v. KATHERINE JOENS et al., Appellees.

TRIAL: Transfer to Law on Failure to Prove Equity. One who pleads himself into equity, but demonstrates, on the trial in equity, that the action is *solely* at law, may not complain of the action of the court in declining to retain further jurisdiction, and in transferring the cause to the law calendar, and especially so when defendant was asking for such transfer.

*Appeal from Scott District Court.*—A. J. HOUSE, Judge.

OCTOBER 2, 1920.

THIS action was brought in equity, plaintiff alleging that defendants, by false representations and conspiracy, induced him to purchase certain mining stock, and obtained from him $2,500. The petition asked to have the contract rescinded, and the stock returned to defendants, or to Mrs. Joens. The petition also alleged that plaintiff had informed defendant that he would rescind the contract, and that he had offered to return the stock, and demanded the return of the money; alleges insolvency of defendant, and plaintiff's right to foreclose his lien on the 500 shares of stock sent him by defendant; and asks for the return of the $2,500, and that he recover judgment for said amount, and for general equitable relief. In addition to a general denial, the defendant, who was served, and who answered, denies that there was any fiduciary relation; denies that she was the agent of plaintiff; denies that she was guilty of any fraud, or that she received any money from the

plaintiff; denies her insolvency. At the proper time, and before trial, defendant moved to transfer the cause to the law calendar, which motion was resisted by plaintiff, and the motion was overruled, because, as the case then stood, the petition, on its face, showed ground for equitable jurisdiction. After the evidence was heard, the court concluded that there were, at that time, no grounds of equitable jurisdiction involved, and held that plaintiff was not entitled to relief in equity; but refused to dismiss, because defendant was entitled to a trial by jury. Thereafter, plaintiff filed a motion for new trial, asking the court to further consider said order, and enter judgment in favor of plaintiff and against defendants, as prayed in the petition. This motion was overruled, and from such rulings, the plaintiff has appealed. He, having appealed first, is the appellant. Defendants contend that the court should have dismissed the petition, and from the refusal to do so, they have appealed.—*Affirmed on both appeals.*

*J. A. Hanley, W. M. Chamberlin,* and *Sharon, Harrison & McSwiggin,* for appellant.

*Cook & Balluff,* for appellees.

PRESTON, J.—1. Personal notice was had on defendant Katherine Joens in this state. She is the only one who has answered, and is the only witness for the defendants. Notice was had upon the other defendants by publication, or service outside of the state.

It is true, as claimed by defendants, that, in the petition, plaintiff claimed misrepresentation and fraud by defendant Katherine, whereby he was induced to purchase from her certain shares of mining stock, for a sum of money in excess of the value of such shares; but the petition also alleges that said defendant conspired with A. B. Stevenson and the others named, with the design and purpose of defrauding plaintiff, and that said Stevenson and his wife, and the other defendants, aided and abetted said Katherine

in her fraudulent designs, and benefited by said transac-
-tions. Plaintiff and his family, and the defendant
Katherine, had lived in Davenport for some years, and
were on friendly terms. Plaintiff sold his interest in the
hotel business for $22,500, and claims that he was incapac-
itated from entering into any other business, and was
anxious to invest his money safely. Plaintiff claims that
defendant frequently mentioned a gold mine in which her
sister and brother-in-law Stevenson were interested, and
stated that her sister had 14,000 shares, and her sister's
husband 40,000 shares of stock, and that it was a big-paying
mine, and that, on account of the income from the mining
stock, he was about to give up his position with a railway
company; that she said the probable monthly dividends
would be $75, and representations of that character were
frequently made; that, thereafter, plaintiff and his family
went to Honolulu, and, on their return, that Mrs. Joens
called on them at Los Angeles, and repeated the representa-
tions, and constantly talked about the mine in a commend-
atory way, and said that, if plaintiff could get some of the
stock, it would make him rich. Soon thereafter, plaintiff
and his family returned to Davenport, and, on the 2d of
June, 1916, received the following telegram from defendant
Katherine Joens:

"Pocatello, Idaho, June 2, 1916

"James Gorman,
   "410 E. 12th St.,
    "Davenport, Iowa.

"I have option for two days on one thousand shares of
Pac. stock, the mines Mr. Stevenson is director of and owns
forty thousand shares. I can handle five hundred shares
myself, would advise you to take the other five hundred
shares. We can get it through Mr. Stevenson at five dollars
per share. This stock has never been on the market. We
are in luck to get this as they pay first dividend in July.
Other party waiting. Answer by wire.

"Mrs. Joens."

In response to this, plaintiff wired as follows:

"Davenport, Iowa, June 2, 1916.
"Mrs. Katherine Joens, Pocatello, Idaho.
"You can draw on me for $2,500.

"J. F. Gorman."

He then wrote her as follows:

"Dear Mrs. Joens:

"Your wire arrived last night 10:30. I replied to it at once stating I would take the 500 shares at $5.00 per share and would send draft today. I do not know who it should be made to. Am advised to have you draw on me through the above bank for the amount $2,500 and I will attend promptly to same. Hope it will make Mr. Stevenson rich and you and I some money, enough to keep us in the non-worry club. We look for you, Hazel and William along about the 20th.     *     *     *

"J. F. Gorman."

A draft was made on plaintiff, signed by A. B. Stevenson, which plaintiff paid. About a month after this, Mrs. Joens returned to Davenport, with her daughter and son, and stayed at plaintiff's home for several weeks. She either gave or sent a certificate of stock to plaintiff, at the same time advising him to pay no attention to "Shares—10c— each." The certificate is set out in the record, and at the bottom thereof, this appears: "Shares—10 cts.—each." Thereafter, plaintiff had an investigation made, which indicated that the stock was of much less value than the price plaintiff paid. One report says:

"If your cousin paid $5.00 per share, he was buncoed out of at least $4.00 per share."

Some of plaintiff's witnesses testify that Mrs. Joens still claimed that the stock was all right, and promised to take the stock back, and return to Mr. Gorman his money, if she could get some insurance that was coming to her; but she failed to do so, and this suit was brought. Plain-

tiff testifies that Stevenson had been a member of the board of directors of the corporation, and interested in the company for several years. Defendant Uhland is Stevenson's stepson, and defendant Hazel Joens is the daughter of Katherine. There is a conflict in the evidence at some points. We have not stated all the evidence, nor gone into the details, and we think it is unnecessary to do so, in the view we take of the case. We do not go into the merits, since there is no adjudication thereof.

The right of rescission, as between plaintiff and defendant, yet remains, and we do not understand that it is necessary to go into equity to rescind. The mining company is not a party to this suit. It is not our custom to go into details, where the case is yet to be tried.· It is enough to say, at this time, that the evidence is sufficient, though in conflict, to take the case to a jury, or raise an issue of fact on the merits of the controversy; and further, that, when the evidence was in, there were no grounds of equitable jurisdiction, and that the remedy of plaintiff was at law. As said, upon the statements made in the petition, there were; but under the evidence, there were none, and the court rightly so held. In other words, plaintiff pleaded himself into equity. Appellant contends that, the suit having been brought in equity, and the court having assumed jurisdiction in that forum, the jurisdiction will be retained, to settle all the rights of the parties, although such adjudication requires the establishment of purely legal rights and the granting of legal remedies which, but for such assumed jurisdiction, would be beyond its authority. It may be that this would be the rule if there were, in fact, some grounds for equitable jurisdiction, although others were of a legal nature. Appellee cites at this point *Richmond v. Dubuque & S. C. R. R. Co.*, 33 Iowa 422, 488, and 2 Story on Equity, Sections 796, 797, as holding that, after equity has properly acquired jurisdiction for any purpose, it may retain the case and grant proper relief by way of damages, but that it cannot do so when jurisdiction is wanting for any, purpose recognized as a ground of equitable jurisdiction.

See, also, *Amodeo Co. v. Town of Woodward,* 187 Iowa 569;
*Fisher v. Trumbauer & Smith,* 160 Iowa 255, 261. Or if
defendants had proceeded with the trial of the action
brought in equity, without objection, the plaintiff might be
entitled to all the relief to which he had shown himself
entitled. But, as we have seen, defendants did object, and,
at the proper time, moved to transfer the cause to the law
side; and this was overruled, for the reasons before stated.
Under the circumstances of the case, we think the trial
court rightly held, at the close of the evidence, that plain-
tiff was not entitled to relief in equity, and that the court
rightly refused to dismiss the case entirely. It was not
necessary that defendants should renew their motion after
the evidence was in, though doubtless it would have been
proper enough to have done so. But the court had author-
ity on its own motion to do so, or the court had a right
to reconsider his ruling; and especially so when it appeared
from the evidence that there were no grounds for exercising
equitable jurisdiction. Suppose, when the motion to trans-
fer was made, the court had said he would hold the motion
and hear the evidence, and then rule. If that had been
done, the motion could have been sustained. That, in effect,
was done. The defendant had not waived the error, if there
was any, in the form of the action, because she did move
to transfer. If plaintiff was not entitled to relief in equity,
it would be a useless proceeding to dismiss the case, in
order to get upon the right side of the calendar. The
statute provides that the error shall not work an abate-
ment or dismissal of the action, but merely transfer to the
proper docket. *Reiger v. Turley,* 151 Iowa 491, 497.

The real controversy between the parties in this case
was the attempt to recover the $2,500.

2. It seems to be conceded by defendant, inferentially
at least, that there might be a theory upon which plaintiff
would be entitled to recover damages, if he could satisfy a
jury, by evidence, that he was entitled to recover. As to
defendant, it is claimed, on her appeal, that the court should
have dismissed the petition, because, as her counsel say,

plaintiff chose his forum, and defendant made all the protest she could, by moving to transfer; that plaintiff kept his case in equity by misstating the facts in his petition; that plaintiff failed to sustain the issues as chosen and made by him. But as we have seen, she was not entitled to a dismissal. She was asking that the cause be transferred to the law docket. This was finally granted to her, and we fail to see that she has any ground for complaint. The cause is affirmed on both appeals, and remanded to the district court for trial.—*Affirmed.*

WEAVER, C. J., EVANS and SALINGER, JJ., concur.